UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
EDSON MAITLAND and EDSON MAITLAND, JR.,

                     Plaintiffs,


      -against-                   MEMORANDUM & ORDER
                                       14-CV-5938(JS)(AKT)

FAWN-NITA LUNN, TOWN OF HEMPSTEAD
and NASSAU COUNTY SOCIAL SERVICES,

                     Defendants.
--------------------------------------X

APPEARANCES
For Plaintiffs:      Edson Maitland, pro se
                   Edson Maitland, Jr., pro se
                   33 Ramblewood Drive
                   Palm Coast, Florida 32164

For Defendants:
Fawn-Nita Lunn      No appearance.

Town of Hempstead   Daniel James Evers, Esq.
                   Joseph E. Macy, Esq.
                   Donna A. Napolitano, Esq.
                   Berkman, Henoch, Peterson,
                     Peddy & Fenchel, P.C.
                   100 Garden City Plaza
                   Garden City, New York 11530

                   Federico A. Amorini, Esq.
                   Law Office of F.A. Amorini
                   16 Dolphin Drive
                   Farmingdale, New York 11735

Nassau County       Pablo A. Fernandez, Esq.
                   Nassau County Attorney's Office
                   One West Street
                   Mineola, New York 11501


SEYBERT, District Judge:

        This matter arises out of a lease agreement between pro

se Plaintiffs and their tenant, Fawn-Nita Lunn, in which the Town

of Hempstead (the "Town") and the Nassau County Department of Social Services[1] (the "County") contributed housing assistance payments. (Compl., Docket Entry 1, ¶¶ 14, 18.) Plaintiffs filed this lawsuit seeking compensation for unpaid rent and property damage. (Compl. ¶¶ 59, 64-65.) The Town moved to dismiss the Complaint for lack of subject matter jurisdiction, untimely service of process, and failure to state a claim. (Town's Br., Docket Entry 24, at 7-17.) While that motion was pending, Plaintiffs asked the Court (1) to impose sanctions for alleged discovery violations and (2) to compel the production of unredacted documents. (Mot. for Sanctions, Docket Entry 52; Mot. to Compel, Docket Entry 53.)

By Memorandum and Order ("M&O") dated March 4, 2016, the Court dismissed this case for lack of subject matter jurisdiction because Plaintiffs failed to satisfy the $75,000 amount-in-controversy requirement. (March 2016 M&O, Docket Entry 58, at 7-

---

[1] As a department of a municipality, the Nassau County Department of Social Services s/h/a Nassau County Social Services is not a suable entity. McCluskey v. Comm'r of Nassau Cty. Dep't of Social Servs., No. 12-CV-3852, 2013 WL 4780954, at *10 n.3 (E.D.N.Y. Sept. 5, 2013); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued."). Instead, the proper defendant is Nassau County. In light of Plaintiffs' pro se status, the Court construes the Complaint as such, and the Clerk of the Court is directed to amend the caption as written above--that is, to substitute Nassau County as a defendant in place of Nassau County Social Services.

8.)  The Court also dismissed Plaintiffs' remaining motions as moot.  (Id. at 11.)

Plaintiffs now move for reconsideration.  (Recons. Mot., Docket Entry 59.)  For the reasons that follow, their motion is DENIED, but the Court grants Plaintiffs leave to file an amended complaint to plead facts that satisfy the minimum jurisdictional amount.

BACKGROUND

The underlying facts are outlined in the Court's prior opinion.  (See March 2016 M&O at 2-5.)  The salient details, with additional history, are provided below.[2]

I.  The Facts

Pro se Plaintiffs own property located in Nassau County, New York (the "Property").  (Compl. ¶ 16; see generally Lease Agmt.[3])  To assist Lunn in leasing the Property, the Town entered

---

[2] The Court accepts all uncontroverted factual allegations in the Complaint as true.  See 5B Charles Alan Wright et al., Federal Practice & Procedure § 1350 (3d ed. 2004) ("[I]t has been well established by the case law that the pleading will be read . . . with all uncontroverted factual allegations . . . accepted as true.  However, once a factual attack is made on the federal court's subject matter jurisdiction, the district judge is not obliged to accept the plaintiff's allegations as true and may examine the evidence to the contrary and reach his or her own conclusion on the matter.").

[3] When citing to any exhibits, the Court will use the page numbers assigned by the Case Management/Electronic Case Files (CM/ECF) system.  References are as follows: the Lease Agreement "Lease Agmt." (Town's Br. Ex. B, Docket Entry 24-2, at 18-20); the Housing Assistance Payments contract "HAP Contract" (Town's

into a Housing Assistance Payment contract (the "HAP Contract")
with Plaintiffs. (HAP Contract at 8-17.) In other words, the
Town, as the Public Housing Agency ("PHA"), would contribute
housing assistance payments. (HAP Contract at 8, ¶ 7.) During
the relevant time periods, the Town's contribution was $1,874, and
either Lunn or the County contributed the remaining $558. (Compl.
¶¶ 51, 53, 72-73; HAP Contract at 14, ¶ 5(a) ("The family is
responsible for paying the owner any portion of the rent to owner
that is not covered by the PHA housing assistance payment.").) If
any property damage occurred, Lunn was responsible:

- "Tenant must pay for damages suffered and money spent by
  Landlord relating to any claim arising from any act or neglect
  of Tenant. Tenant is responsible for all acts of Tenant's
  family, employees, guests or invitees."[4] (Lease Agmt. at 19
  ¶ 9.)

- "The PHA has no liability or responsibility to the owner or
  other persons for the family's behavior or the family's
  conduct in tenancy." (HAP Contract at 10 ¶ 2(e).)

- "The PHA is only responsible for making housing assistance
  payments to the owner . . . The PHA shall not pay any other

Br. Ex. A, Docket Entry 24-2, at 8-17); the Town building
inspector's letter dated January 28, 2014 "Inspector's Jan. 28,
2014 Ltr." (Town's Br. Ex. C, Docket Entry 24-2, at 21-30); the
Town building inspector's letter dated November 24, 2014
"Inspector's Nov. 24, 2014 Ltr." (Town's Br. Ex. G, Docket Entry
24-2, at 40-41); the Town's termination letter dated April 1,
2014 "Town's Termination Ltr." (Town's Br. Ex. F, Docket Entry
24-2, at 35-36); and the hearing officer's July 25, 2014
decision "Appeal Decision" (Town's Br. Ex. F, Docket Entry 24-2,
at 37-39).

[4] The HAP Contract defines "family" as any "persons who may
reside in the unit with assistance under the program." (HAP
Contract at 5 ¶ 17.)

claim by the owner against the family." (Id. at 11 ¶ 7(e)(1)-(2).)

- "If the security deposit is not sufficient to cover amounts the tenant owes under the lease, the owner may collect the balance from the tenant." (Id. at 16 ¶ 12(d).)

The Town terminated the HAP Contract--and thus the Lease Agreement--effective May 1, 2014 because Lunn did not submit certain documentation. (Town's Termination Ltr. at 36; HAP Contract at 16 ¶ 9 ("If the HAP contract terminates for any reason, the lease terminates automatically.").) Lunn appealed but was unsuccessful. (Appeal Decision at 39 ("Based upon the evidence presented, it is the Decision of this Hearing Officer that Ms. Fawn-Nita Lunns' [sic] participation in the Section 8 Program be terminated effective July 31, 2014.").)

Nevertheless, Lunn did not vacate the Property until November 5, 2014. (Recons. Mot. at 1.) After she moved out, a Town building inspector noted the following issues:

- The living room required covers for electrical outlets and light switches.

- The bathroom and the kitchen were left in an unsanitary state. The kitchen's electrical panel had been tampered with.

- The Property's exterior was covered with debris and garbage. The rain gutters were clogged.

- A building permit for the finished basement was open.

- Throughout the unit, the ceilings, walls, doors, and floors were in a state of disrepair.

- All bedrooms required smoke detectors.

(Inspector's Nov. 24, 2014 Ltr. at 41.)  Previously, in January 2014, a Town building inspector noted some of these issues. (Inspector's Jan. 28, 2014 Ltr. at 22-30 (noting, among other items, missing smoke detectors, unresolved building permit, damaged doors, floors, and living room walls).)

## II. The Procedural History

Plaintiffs filed the Complaint on October 6, 2014. (Docket Entry 1.)  The Town was served by the United States Marshals Service on April 20, 2015.  (Docket Entry 17.)  Plaintiffs contends that the United States Marshals Service failed to timely serve the Town.  (Pl.'s May 4, 2015 Ltr., Docket Entry 19, at 1.)

Plaintiffs asserted three claims against the Town: breach of contract, (Compl. ¶¶ 47-66); unjust enrichment, (Compl. ¶¶ 67-76); and equitable estoppel, (Compl. ¶¶ 78-98).[5]  Construed liberally, the Complaint seeks equitable relief, injunctive relief, compensatory damages, and emotional distress damages. (Compl. ¶¶ 3, 108(a)-(c).)  Although the Complaint states that "[t]he amount in controversy is in excess of $75,000.00 U.S.D which include[s] costs and fees," (Compl. ¶ 3), each cause of action

---

[5] Plaintiffs asserted the same claims against Lunn and the County.  Plaintiffs also allege that Lunn violated the Racketeer Influenced and Corrupt Organization Act ("RICO").  (Compl. ¶¶ 101-06.)

seeks $37,106 in damages: $18,050 in property damage and $19,056 in unpaid rent as of October 2014.[6]  (Compl. ¶¶ 59, 64-65.)

On May 12, 2015, the Town moved to dismiss the Complaint on three grounds: (1) Plaintiffs failed to satisfy the $75,000 amount-in-controversy requirement, (Town's Br. at 7-10); (2) Plaintiffs did not serve the Town with a summons and complaint within 120 days of filing the Complaint with the Court, (id. at 10-12); and (3) Plaintiffs failed to state a claim, (id. at 12-17).[7]

Plaintiffs filed a two-page opposition which provided no substantive response to the Town's arguments on damages.  (Pl.'s Opp., Docket Entry 27, at 1.)  Plaintiffs noted that Lunn vacated the Property after the Complaint was filed but did not clarify whether additional damages occurred.  (Id. at 1, 7.)  Instead, Plaintiffs stated only that "[t]he amount in controversy is over $75,000.00 in Property Damage and Back Rent."  (Id. at 1.)

On January 19, 2016, Plaintiffs filed a motion for sanctions against the Town and the County for alleged noncompliance with discovery.  (Docket Entry 52.)  Plaintiffs also filed a

---

[6] For the unjust enrichment claim, Plaintiffs split the unpaid rent between the Town ($7,812) and the County ($11,244). (Compl. ¶¶ 72-73.)

[7] On May 11, 2015, the County filed its answer.  (Docket Entry 23.)  Because Lunn failed to answer or otherwise defend herself, the Clerk of the Court entered a default against her. (Docket Entry 56.)

request to remove the redacted portion of certain documents. (Docket Entry 53.)

On March 4, 2016, the Court dismissed the case for lack of subject matter jurisdiction:

> Plaintiffs state, flatly and without more, that "[t]he amount in controversy is in excess of $75,000.00 U.S.D which include[s] costs and fees." But that contention is belied by their damages calculation, which amounts to $37,106 against all Defendants. . . . Moreover, the Complaint does not state that the precise amount of damages is uncertain or that damages continue to accrue, nor do Plaintiffs offer any clarification on their damages calculation in their opposition letter, which simply rejects the Town's arguments.

(March 2016 M&O at 8) (internal citations omitted). The Court made two other pertinent findings: (1) the Complaint, construed liberally, does not plausibly allege emotional distress damages, and (2) the RICO claim "seeks the same damages as the other claims." (Id. at 8 n.8, 9.) Furthermore, the Court dismissed without prejudice the Nassau County Social Services sua sponte and dismissed Plaintiffs' two motions as moot. (Id. at 11.)

III. The Reconsideration Motion

On March 7, 2016, Plaintiffs filed their motion for reconsideration. (Docket Entry 59.) As for subject matter jurisdiction, Plaintiffs contend that they could not provide a final damages calculation because Lunn did not vacate the Property until November 4, 2014, one month after this lawsuit was filed.

8

(Recons. Mot. at 1.)  Between January and February 2016, Plaintiffs prepared sworn affidavits that address (1) total damages, (2) labor estimates, (3) outstanding rent, (4) unpaid labor, (5) paid property damage, and (6) unpaid property damage.  (Id. at 5–11.)  Plaintiffs now seek $104,217.54 in damages: $75,433.54 in property damage and $28,784.00 in unpaid rent as of October 2014.  (Id. at 5.)  In this revised calculation, Plaintiffs seek lost rent and additional property damage.  (Id. at 6–11.)

## DISCUSSION

As a general matter, pro se litigants are entitled to "'special solicitude.'"  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (quoting Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994).  The Court must construe their submissions liberally and interpret them "'to raise the strongest arguments that they suggest.'"  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). This leeway, however, does not excuse them "'from compliance with relevant rules of procedural and substantive law.'"  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. Nov. 1981)).

## I.   Standard of Review for Reconsideration Motions

To begin, the Court will address reconsideration of its decision on the Town's motion to dismiss.  A motion for reconsideration is appropriate when the moving party believes that

the Court overlooked important "'matters or controlling decisions'" that would have influenced the prior decision.  Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999) (quoting Local Civ. R. 6.3).  In that regard, reconsideration is not a proper tool to repackage arguments and issues already considered by the Court in deciding the original motion.  Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997).  Nor is it proper to raise new arguments and issues.  Id.  In other words, reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that . . . might reasonably be expected to alter the conclusion reached by the court."  Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001); see also Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (recognizing that the standard for reconsideration is "strict") (collecting cases).

## II.  The Town's Motion to Dismiss

### A.  Amount-in-Controversy Requirement

"[F]ederal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction."  Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000).  As relevant here, federal courts have subject matter jurisdiction when the lawsuit is between "citizens of different States" and the amount in controversy exceeds "$75,000, exclusive of interests and costs."  28 U.S.C.

§ 1332(a)(1); see also St. Paul, 409 F.3d at 80 ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant."). The parties meet the diversity requirement because Plaintiffs are citizens of Florida and Defendants are citizens of New York. (Compl. ¶¶ 5, 9.) The remaining question, then, is whether the Court erred in holding that Plaintiffs' prayer for damages does not exceed the $75,000 amount-in-controversy requirement.

Plaintiffs filed their Complaint on October 6, 2014. (Docket Entry 1.) In it, they claim $37,106 in damages. (Compl. ¶¶ 59, 64–65.) The Court therefore dismissed the case for lack of subject matter jurisdiction. (March 2016 M&O at 11.) In filing their reconsideration motion, however, Plaintiffs assert that Lunn vacated the Property after the Complaint was filed and that additional damages occurred. (Recons. Mot. at 1.)

But "'post-filing event[s]' do not affect the calculation of the amount in controversy, which is 'established as of the date of the complaint and is not reevaluated based on post-filing events.'" Carling v. Peters, No. 10-CV-4573, 2013 WL 865842, at *3 (S.D.N.Y. Mar. 8, 2013) (alteration and emphasis in original) (quoting Hall v. EarthLink Network, Inc., 396 F.3d 500, 506 (2d Cir. 2005)). But see Hall, 396 F.3d at 506–07 (permitting post-filing events if they "suggest that the amount in controversy allegation in the complaint was made in bad faith"). Plaintiffs,

as the parties invoking jurisdiction, bear the burden of proving that their claims meet the minimum jurisdictional amount to a "'reasonable probability.'" Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (quoting Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975)); see also St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290, 58 S. Ct. 586, 591, 82 L. Ed. 845 (1938) (emphasizing that the party asserting jurisdiction "knows or should know whether his claim is within the statutory requirement as to amount"). The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999); Tongkook, 14 F.3d at 784 (presuming "'good faith'" unless, for example, it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount") (quoting St. Paul, 303 U.S. at 288-89, 58 S. Ct. at 591).

To meet their burden, Plaintiffs must support their jurisdictional facts "with 'competent proof and justify [their] allegations by a preponderance of the evidence.'" United Food Com. Workers' Union v. CenterMark Props. Meridian Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994) (quoting McNutt v. GMAC of Ind., Inc., 298 U.S. 178, 189, 56 S. C. 780, 785, 80 L. Ed. 1135 (1936). In other words, Plaintiffs cannot rely on speculative or conclusory

allegations.  Spaulding v. Figeroux, No. 16-CV-1040, 2016 WL 1240428, at *3 (E.D.N.Y. Mar. 29, 2016); Mallgren v. Microsoft Corp., 975 F. Supp. 2d 451, 456 (S.D.N.Y. 2013) (dismissing a pro se compliant because of "conclusory" allegations that did not satisfy the plausibility standard); Wood v. Maguire Automotive LLC, 508 F. App'x 65, 65 (2d Cir. 2013) (finding that conclusory allegations on the $75,000 amount-in-controversy requirement are "not entitled to a presumption of truth").  In reviewing the complaint and any associated materials, federal courts may conduct an independent appraisal of the alleged damages.  4C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3725.1, n.12 (4th ed. 2009 and Supp. 2014).

Here, the Court correctly found that Plaintiffs did not satisfy the amount-in-controversy requirement, as they failed to allege to a "reasonable probability" that they suffered damages in excess of $75,000.  Their claims, at bottom, seek $37,106 in damages: $18,050 in property damage and $19,056 in unpaid rent as of October 2014.  (Compl. ¶¶ 59, 64–65.)  To be sure, paragraph three of the Complaint states that "[t]he amount in controversy is in excess of $75,000.00 U.S.D which include[s] costs and fees." (Compl. ¶ 3.)  But Plaintiffs' "boilerplate statement that [their] claims satisfy the amount in controversy sheds no light on the actual amount of damages."  See Parker v. Riggio, No. 10-CV-9504, 2012 WL 3240837, at *8 (S.D.N.Y. Aug. 6, 2012).  What is more, the

amount in controversy must exceed "$75,000, exclusive of interests and costs," 28 U.S.C. § 1332(a)(1), and this claim was speculative at the time of filing. Although Lunn did not vacate for another month, the Town building inspector surveyed the Property and provided a letter outlining his findings, a copy of which is attached to the Town's motion to dismiss. (See Inspector's Nov. 24, 2014 Ltr. at 41.) A fair reading of that letter does not suggest that Plaintiffs' damages would increase by approximately $38,000. (Compare id. with Inspector's Jan. 28, 2014 Ltr. at 22–30.)

Nor did Plaintiffs' opposition clarify their factual allegations after Lunn vacated the Property. (Pl.'s Opp. at 1, 7.) On this subject, they flatly dismiss the Town's arguments, stating only that "[t]he amount in controversy is over $75,000.00 in Property Damage and Back Rent." (Id. at 1.) The lack of clarity is especially perplexing given the level of detail in the Complaint where Plaintiffs provided an itemized breakdown of damages and the specific months with unpaid rent. (See, e.g., Compl. ¶¶ 51–65.)

Outside of the boilerplate statement of $75,000 and the repeated demands for $37,106, the Court perceives three other avenues for relief: (1) equitable remedies, (2) emotional distress damages, and (3) the RICO claim against Lunn because it does not request a precise monetary value. (Compl. ¶¶ 3, 101–06, 108(a)–

14

(c).)  The Court did not err in finding that these avenues were not successful in light of the speculative nature of these claims. First, the Court cannot state to a "reasonable probability" that either equitable relief or injunctive relief exceed $75,000.  See Parker, 2012 WL 3240837, at *7; see also Dimich v. Med-Pro, Inc., 304 F. Supp. 2d 517, 519 (S.D.N.Y. 2004) ("Benefits from an injunction must not be 'too speculative and immeasurable.'") (quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1270 (11th Cir. 2000)).  Second, Plaintiffs failed to offer competent proof that emotional distress damages are viable.  (See March 2016 M&O at 9.)  Third, the RICO claim does not seek additional damages outside of the $37,106 alleged.  (See id. at 8 n.8.)

In light of the above, Plaintiffs' motion for reconsideration is denied without prejudice to Plaintiffs' filing an amended complaint.  Plaintiffs have provided post-filing affidavits that detail $104,217.54 in damages: $75,433.54 in property damage and $28,784.00 in unpaid rent as of October 2014. (Recons. Mot. at 5.)

III. Leave to Amend

The Court's usual practice is to allow a plaintiff leave to amend "when justice so requires."  FED. R. CIV. P. 15(a)(2).  But "a court should deny a request to amend where there has been undue delay or bad faith, if the proposed amendment is futile, or if leave to amend will result in prejudice to the opposing party."

15

Darden, 191 F. Supp. 2d at 399; accord Ferrara v. Smithtown
Trucking Co., Inc., 29 F. Supp. 3d 274, 285 (E.D.N.Y. 2014). On
that basis, the Court will consider the rest of the Town's
arguments in its motion to dismiss. See Jordan v. Verizon Corp.,
No. 08-CV-6414, 2008 WL 5209989, at *5 (S.D.N.Y. Dec. 10, 2008).

    A.   Rule 12(b)(5)

       The Town moved to dismiss the Complaint for untimely
service of process under Federal Rule of Civil Procedure 12(b)(4).
(Town's Br. at 10-12.) However, the Court construes this argument
as one under Rule 12(b)(5):

> At the outset it is necessary to distinguish
> [a] motion under Rule 12(b)(4) from that under
> Rule 12(b)(5). An objection under Rule
> 12(b)(4) concerns the form of the process
> rather than the manner or method of its
> service. . . . A Rule 12(b)(5) motion is the
> proper vehicle for challenging the mode of
> delivery or the lack of delivery of the
> summons and complaint. Other than those cases
> in which it is confused with a motion under
> Rule 12(b)(5), a motion under Rule 12(b)(4) is
> fairly rare.

See 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1350 (3d
ed. 2004) (footnotes omitted).

    i.   Legal Standard

       On a Rule 12(b)(5) motion to dismiss, the plaintiff bears
the burden of proving that service was timely. Dickerson v.
Napolitano, 604 F.3d 732, 752 (2d Cir. 2010). As with
Rule 12(b)(1), "a Court must look to matters outside the complaint

to determine whether it has jurisdiction." <u>Darden v.</u>
<u>DaimlerChrysler N. Am. Holding Corp.</u>, 191 F. Supp. 2d 382, 387
(S.D.N.Y. 2002).

Under Rule 4(j)(2), a local government, like the Town,
must be served pursuant to state law. <u>See</u> FED. R. CIV.
P. 4(j)(2)(B). New York law requires service within 120 days of
the filing of a summons and complaint. NY CPLR § 306-b. If
service is untimely, Rule 4(m) instructs district courts to
"dismiss the action without prejudice against that defendant or
order that service be made within a specified time. But if the
plaintiff shows good cause for the failure, the court must extend
the time for service for an appropriate period."[8] <u>See</u> FED. R. CIV.
P. 4(m). Good cause springs from "exceptional circumstances, where
the insufficiency of service results from circumstances beyond the
plaintiff's control." <u>Feingold v. Hankin</u>, 269 F. Supp. 2d 268,
276 (S.D.N.Y. 2003) (considering the prejudice to the defendant
and the plaintiff's reasonable and diligent efforts). "However,
even where good cause does not exist, courts remain free to
exercise their discretion in extending the time for service." <u>Id.</u>
at 277; <u>see also</u> <u>DeLuca v. AccessIT Grp., Inc.</u>, 695 F. Supp. 2d

---

[8] "By amendment effective December 1, 2015, the time for serving
a complaint under Rule 4(m) was reduced from 120 days to 90
days." <u>Stevens v. Landes</u>, No. 13-CV-643S, 2016 WL 7210072,
at *1 n.3 (W.D.N.Y. Dec. 13, 2016). But the Court evaluates
service of process "as required by the version of Rule
4(m) . . . in effect at that time." <u>Id.</u> at *1.

54, 66 (S.D.N.Y. 2010) ("Under Rule 4(m), the Court <u>must</u> extend the time to serve if plaintiff has shown good cause, and <u>may</u> extend the time to serve even in the absence of good cause.").

    ii. <u>Untimely Service of Process</u>

    Plaintiffs filed the Complaint on October 6, 2014, (Docket Entry 1), and the Town was served by the United States Marshals Service on April 20, 2015, or 196 days later (Docket Entry 17). Although service did not occur within the required time period, the Court finds that dismissal is not appropriate on this ground. Shortly after this case was filed, the Court granted Plaintiff leave to proceed <u>in forma pauperis</u> and directed the United States Marshals Service to serve the summons and Complaint. (Jan. 29, 2015 M&O, Docket Entry 6, at 1–2). <u>Pro se</u> plaintiffs proceeding <u>in forma pauperis</u> "are entitled to rely on the Marshals to effect service." <u>Meilleur v. Strong</u>, 682 F.3d 56, 61 (2d Cir. 2012). Therefore, because the delay in service was caused by circumstances outside of Plaintiffs' control, the Court finds good cause to retroactively extend their time to serve the Complaint until April 20, 2015.[9]  <u>Stevens</u>, 2016 WL 7210072, at *2

---

[9] To be sure, "[i]f a plaintiff proceeding IFP chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so." <u>Meilleur</u>, 682 F.3d at 63. However, the Court will not fault Plaintiff for failing to request an extension because the Court

18

("Consequently because the court is responsible for the failure to serve, good cause exists under Rule 4(m) for an extension of time to complete service.") (citing <u>McCalman v. Partners in Care</u>, No. 01-CV-5844, 2002 WL 856465, at *1 (S.D.N.Y. Apr. 25, 2002)).

B.   <u>Rule 12(b)(6)</u>

i.   <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007), and allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the plaintiff need not provide "detailed factual allegations" to support his claims, <u>Twombly</u>, 550 U.S. at 555-56, 127 S. Ct. at 1964, Rule 12(b)(6) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949. In evaluating the motion, the Court construes "the complaint liberally, accepting all factual

---

was aware that Plaintiff was relying on the Marshals Service, and in fact, ordered such service. (<u>See</u> Jan. 29, 2015 M&O at 1-2.) In any event, based on Plaintiffs' <u>pro</u> <u>se</u> status and the general preference to decide cases on the merits, the Court would exercise its discretionary authority and grant a retroactive extension of time. <u>See</u> <u>Cody v. Mello</u>, 59 F.3d 13, 15 (2d Cir. 1995).

allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Along with the Complaint, the Court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted); see also Chambers, 282 F.3d at 153 (noting that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).  Thus, as relevant for present purposes, the Court will consider the HAP Contract, the Lease Agreement, the Town's termination letter dated April 1, 2014, and the hearing officer's July 25, 2014 decision.

As noted above, Plaintiffs brought claims for breach of contract, unjust enrichment, and equitable estoppel.  The Court will address each one in turn.

ii.  Breach of Contract

Plaintiffs contend that the Town is liable for property damage and unpaid rent.[10]  (Compl. ¶¶ 65-66.)  To state a claim for

---

[10] The Lease Agreement is the contract at issue.  (Compl. ¶ 50; see id. ¶¶ 14, 18-19, 25.)  Although the Town is not a party to the Lease Agreement, the Town is a party to the HAP Contract,

breach of contract, a plaintiff must plausibly allege: (1) the existence of a contract between the plaintiff and the defendant, (2) the defendant's breach of that contract, and (3) damages as a result of the breach. See Friedman v. Maspeth Fed. Loan & Savs. Ass'n, 30 F. Supp. 3d 183, 192 (E.D.N.Y. 2014).

First, under the Lease Agreement and the HAP Contract, Lunn is responsible for all property damage. (Lease Agmt. at 19 ¶ 9; HAP Contract at 10 ¶ 2(e), 11 ¶ 7(e)(1)-(2), 16 ¶ 12(d).) Plaintiffs have not offered any arguments to overcome this straightforward result.

But Plaintiffs have plausibly alleged that the Town is responsible for unpaid rent between May 2014 and July 2014. To begin, the Complaint lists five groups of dates for unpaid rent:

1. July 2012 to December 2012 ($558 per month)

2. December 2013 to July 2014 ($558 per month)

3. May 2014 to July 2014 ($1,874 per month)

4. August 2014 to October 2014 ($1,874 per month)

5. August 2014 to October 2014 ($558 per month)

(Compl. ¶¶ 51, 53-54.) The Town is responsible for the $1,874 payments, and either Lunn or the County is responsible for the $558 payments. (Compl. ¶¶ 51, 53, 72-73.) Put differently, the Town is not responsible for items one, two, or five. As for items

_____

which provides for housing assistance payments in connection with the lease. (HAP Contract at 10 ¶¶ 1(a), 2(a).)

three and four, which span from May 2014 to October 2014, the Town

terminated the HAP Contract as of May 1, 2014. (Town's Termination

Ltr. at 36.) When the HAP Contract expires, so does the Lease

Agreement. (HAP Contract at 16, ¶ 9.) That would have foreclosed

the matter, but after the Town issued its termination letter, Lunn

appealed. Although she was unsuccessful, the hearing officer

concluded that "Ms. Fawn-Nita Lunns' [sic] participation in the

Section 8 Program [will] be terminated effective July 31, 2014."

(Appeal Decision at 39.) On that basis, the Town may be

responsible for housing assistance payments from May 2014 to

July 2014, which is item three. Therefore, it would not be futile

for Plaintiffs to replead their breach of contract claim.

### iii. Unjust Enrichment

Next, Plaintiffs contend that the Town has been unjustly

enriched by retaining payments owed to Plaintiffs for property

damage and unpaid rent. (Compl. ¶ 73.) To state a claim for

unjust enrichment, a plaintiff must establish three elements:

(1) that the defendant benefitted (2) at the plaintiff's expense

and (3) that equity requires some form of compensation. See

Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 458

(S.D.N.Y. 2016). But a party cannot maintain an unjust enrichment

claim when a valid contract governs the dispute. Id. at 458-59

(collecting cases); see also Beth Israel Med. Ctr. v. Horizon Blue

Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586-87 (2d

Cir. 2006) (emphasizing that unjust enrichment, as a quasi-contract remedy, is "an obligation the law creates <u>in the absence of any agreement</u>") (internal quotation marks and citation omitted) (emphasis in original). Plaintiffs have not challenged the validity of the Lease Agreement, which forms the basis of their allegations. In other words, Plaintiffs cannot proceed under both breach of contract and quasi-contract theories, so their unjust enrichment claim against the Town is DISMISSED WITHOUT PREJUDICE.

### iv. Equitable Estoppel

Plaintiffs' final argument is easily dismissed because equitable estoppel is an affirmative defense, not a cause of action. <u>Einiger v. Citigroup, Inc.</u>, No. 14-CV-4570, 2014 WL 4494139, at *2 n.1 (S.D.N.Y. Sept. 12, 2014) (citing <u>Jain v. T & C Holding Inc.</u>, No. 10-CV-1006, 2011 WL 814659, at *7 (S.D.N.Y. Mar. 3, 2011)). Accordingly, this claim against the Town and the County is DISMISSED WITH PREJUDICE.

To summarize: In any forthcoming complaint, Plaintiffs must assert proper jurisdictional allegations with respect only to (1) the breach of contract claim against the Town and the County and (2) the unjust enrichment claim against the County.

## III. Plaintiffs' Motions for Sanctions

As noted at the outset, Plaintiffs filed a motion for sanctions and a motion to compel unredacted documents. They ask the Court to reconsider its ruling denying both motions as moot.

(March 2016 M&O at 11.)  The Court will address each motion in turn.

    A.   <u>Motion for Sanctions</u>

First, Plaintiffs sought sanctions against the Town and the County because they allegedly failed to file timely document requests.  (Mot. for Sanctions at 1.)  In its prior opinion, the Court dismissed Plaintiffs' motion as moot.  (March 2016 M&O at 11.)  However, some clarification is necessary because the Court did not specify its grounds for doing so.

It is true that "courts have the power to impose . . . sanctions even when they lack subject matter jurisdiction to adjudicate the merits of a dispute."  <u>Chemiakin v. Yefimov</u>, 932 F.2d 124, 129 (2d Cir. 1991); <u>accord</u> <u>Sassower v. Field</u>, 973 F.2d 75, 80–81 (2d Cir. 1992) (recognizing that district courts have "inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons").  But in an earlier filing, Plaintiffs raised identical arguments--that the Town and the County did not timely serve their document requests--which were rejected by Magistrate Judge A. Kathleen Tomlinson.  (<u>See</u>, Jan. 22, 2016 Order, Docket Entry 49 ("The Court is not taking any action in light of the representations by defendants that their demands were timely served on the Plaintiffs.").)  Specifically, the Town produced an affidavit of service, (Docket Entry 47-1), and the County produced

its letter and postmarked envelopes, (Docket Entry 48-1).
Therefore, without additional arguments by Plaintiffs, Judge
Tomlinson's ruling mooted this issue, and thus the Court did not
err in dismissing Plaintiffs' sanctions motion as moot.

B.  <u>Motion to Compel</u>

In their second motion, Plaintiffs sought the unredacted
version of eight exhibits, which primarily redact the name of the
lessee on various agreements and letters. (Mot. to Compel at 1–
2.) Without subject matter jurisdiction, the Court dismissed
Plaintiffs' document request as moot. (March 2016 M&O at 11.)

The Town and the County have invoked, among other
provisions, New York Social Services Law Section 136, which
generally prohibits the disclosure of any information that
identifies whether an individual is or has been a recipient of
public assistance. (Town's Mar. 1, 2016 Ltr., Docket Entry 57,
at 2; Nassau's Apr. 21, 2015 Ltr., Docket Entry 13, at 2.) In any
event, Judge Tomlinson stayed discovery pending the outcome of the
Town's motion to dismiss. (Nov. 25, 2015 Min. Order, Docket
Entry 42, at 2, ¶ 4.)

At this time the Court's ruling stands, but if Plaintiffs
file an amended complaint and wish to pursue their request for
unredacted documents, they are granted leave to renew their motion.

Plaintiffs' motion for reconsideration (Docket Entry 59) is DENIED, but the Court GRANTS Plaintiffs leave to file an amended complaint to satisfy the $75,000 amount-in-controversy requirement in accordance with this Memorandum & Order. Plaintiffs should rely on the allegations made in their January and February 2016 affidavits, which detail a revised damages calculation. Plaintiffs' remaining claims are as follows: (1) breach of contract against Nassau County and the Town of Hempstead and (2) unjust enrichment against Nassau County.

Any Amended Complaint shall be filed within thirty (30) days from the date of this Order, shall be titled "Amended Complaint," and shall bear the same docket number as this Order, No. 14-CV-5938(JS)(ARL). Plaintiffs are cautioned that an Amended Complaint supercedes the original Complaint. Therefore, all claims and allegations Plaintiffs wish to pursue should be included in the Amended Complaint.

The Court also GRANTS Plaintiffs' leave to renew their motion to compel unredacted documents. If an amended complaint is filed, Plaintiffs may coordinate discovery matters with Judge Tomlinson's Chambers.

Given Plaintiffs' pro se status, the Court certifies that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is DENIED for the purposes of

any appeal.  <u>Coppedge v. United States</u>, 369 U.S. 438, 444–45, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to amend the caption to substitute Nassau County as a defendant in place of Nassau County Social Services.  (<u>See</u> supra. at 2, n.1.)  The Clerk of the Court is directed to mail a copy of this Memorandum and Order to <u>pro se</u> Plaintiffs Edson Maitland and Edson Maitland, Jr.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March  21 , 2017
          Central Islip, New York