```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
EDSON MAITLAND and EDSON
MAITLAND, JR.,

                    Plaintiffs,         MEMORANDUM & ORDER
                                        14-CV-5938(JS)(AKT)
     -against-

FAWN-NITA LUNN, TOWN OF HEMPSTEAD,
NEW YORK, and COUNTY OF NASSAU,

                    Defendants.
----------------------------------x
APPEARANCES
For Plaintiffs:      Edson Maitland, pro se
                     Edson Maitland, Jr., pro se
                     33 Ramblewood Drive
                     Palm Coast, Florida 32164

For Defendants:
County of Nassau     Pablo A. Fernandez, Esq.
                     Lisa M. Ben-Sorek, Esq.
                     Nassau County Attorney's Office
                     One West Street
                     Mineola, New York 11501

Town of Hempstead    Daniel James Evers, Esq.
                     Joseph E. Macy, Esq.
                     Donna A. Napolitano, Esq.
                     Berkman, Henoch, Peterson,
                       Peddy & Fenchel, P.C.
                     100 Garden City Plaza
                     Garden City, New York 11530

                     Federico A. Amorini, Esq.
                     Law Office of FA Amorini
                     16 Dolphin Drive
                     Farmingdale, New York 11735
```

SEYBERT, District Judge:

    This diversity action by the plaintiffs Edson Maitland ("Maitland") and Edson Maitland, Jr. ("Maitland Jr." and together, "Plaintiffs") concerns allegations of breach of contract and

unjust enrichment.  Currently pending before the Court are defendants', the Town of Hempstead, New York, (the "Town"), and the County of Nassau, (the "County" and together, "Defendants"), motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Town Mot., D.E. 103; Cty. Mot., D.E. 97.)  However, because the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims against the Town and the County, those claims are dismissed without prejudice to re-filing in state court and the motions for summary judgment are TERMINATED as moot.

BACKGROUND

The Court assumes familiarity with the underlying facts of this case, which are described in the Court's prior orders.  (See Mar. 4, 2016 M&O, D.E. 58, at 2-5; Mar. 21, 2017 M&O, D.E. 62, at 3-9.)  Briefly, however, the relevant facts and procedural history are provided below.

I. Factual Background[1]

Pro se Plaintiffs are the owners of property located in Roosevelt, New York (the "Property").[2]  (Am. Compl., D.E. 66,

---

[1] The following facts are taken from the parties' Rule 56.1 Statements and Counterstatements, and the exhibits filed in connection with Defendants' motions for summary judgment.  Any relevant factual disputes are noted.

[2] The County contends that Maitland and his wife, Yvonne Maitland own the deed to the Property, and are therefore the true owners.  (Cty. Br., D.E. 101, at 9.)  Plaintiffs contend that Maitland Jr. is a joint owner of the Property and has "Power of

2

¶ 16.) Plaintiffs participate in the Section 8 Housing Choice Voucher Program, a federal program created by the United States Housing Act of 1937 and the Housing and Community Development Act of 1974 ("Section 8 program"). 42 U.S.C. § 1437f. The Section 8 program was created "for the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). "The program operates by providing federal subsidies to private building owners like [P]laintiffs, who lease apartment units to low-income families at a reduced rental rate." See Renaissance Equity Holdings LLC v. Donovan, No. 12-CV-1639, 2013 WL 2237547, at *1 (E.D.N.Y. May 21, 2013). The program is administered by local public housing agencies ("PHAs"), and these entities receive funding from the Department of Housing and Urban Development ("HUD") for their corresponding costs. 24 C.F.R. § 982.1(a)(1). "The amount and terms of the rental subsidy payments PHAs make to owners are determined by Housing Assistance Payment ("HAP") contracts executed by the PHAs and owners." Renaissance, 2013 WL 2237547, at *1. "Building owners enter into separate leases with the respective low-income tenants, but do not contract directly with HUD." (Id.)

---

Attorney." (Pls. 56.1 Counterstmt., D.E. 111 at ECF pp. 51-76, ¶ 10.)

A. The HAP Contract and Lease Agreement

On or about April 26, 2010, Plaintiffs entered into a HAP Contract with the Town, as the PHA, by which they provided Section 8 housing to Defendant Fawn-Nita Lunn ("Lunn") at the subject Property.[3] (Town 56.1 Stmt., D.E. 103-1, ¶ 11; Pls. 56.1 Counterstmt. ¶ 16.) The County was not a party to the HAP Contract. (See HAP Contract, Napolitano Decl., Ex. E, D.E. 103-10.) Pursuant to the HAP Contract, the Town was initially required to make monthly payments of $1,742 directly to Plaintiffs on behalf of Lunn, and Plaintiffs were responsible for providing all utilities to the Property. (Town 56.1 Stmt. ¶ 12; HAP Contract, Part A, ¶ 7, Part B, ¶ 3(b).) The HAP Contract was subject to yearly renewals beginning on the first day of the initial term of the Lease and terminating on the last day of the term of the Lease. (Town 56.1 Stmt. ¶ 19; HAP Contract, Part B, ¶ 4(a).)

The HAP Contract details the terms and conditions of payment, termination, and Housing Quality Standards ("HQS").[4] (Town 56.1 Stmt. ¶ 13; HAP Contract, Part B.) In regard to

---

[3] As of the date of this Order, Lunn has not been served in the instant action.

[4] HUD prescribes certain HQS with which all Section 8 housing must comply in order for owners to receive the rental subsidies. 42 U.S.C. § 1437f(o)(8); 24 C.F.R. § 982.401. If a Section 8 housing owner is unable or unwilling to correct an HQS violation, the PHA is entitled to terminate the owner's Section 8 funding. 24 C.F.R. § 982.306(c)(1).

4

liability, the HAP Contract provides: "The [Town] has no liability or responsibility to [Plaintiffs] or other persons for the family's behavior or the family's conduct in tenancy." (HAP Contract, Part B, ¶ 2(e); Town 56.1 Stmt. ¶ 15.) It specifically states:

> [t]he [Town] is only responsible for making housing assistance payments to [Plaintiffs] in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.
> **The [Town] shall not pay any portion of the rent to [Plaintiffs] in excess of the housing assistance payment. The [Town] shall not pay any other claim by [Plaintiffs] against the family.**

(HAP Contract, Part B, ¶ 7(e)(1)-(2); Town 56.1 Stmt. ¶ 23 (emphasis added).) The HAP Contract further provides that "[i]f the security deposit is not sufficient to cover amounts [Lunn] owes under the lease, [Plaintiffs] may collect the balance from [Lunn]." (HAP Contract, Part C, ¶ 12(d).)

On March 31, 2010, Plaintiffs and Lunn entered into a Lease Agreement ("Lease") for the Property. (See Lease, Napolitano Decl., Ex. D, D.E. 103-9; Town 56.1 Stmt. ¶ 10.) The Lease period was from May 1, 2010 through April 30, 2011 and was subject to yearly renewals. (See Lease.) Neither the County nor the Town were parties to the Lease.[5] Pursuant to the Lease Agreement,

---

[5] Plaintiffs contend that the Town and the County were also parties to the Lease (Pls. 56.1 Counterstmt. ¶ 14), however, the Lease does not contain any reference to either party. (See generally Lease.)

"[Lunn] must pay for damages suffered and money spent by [Plaintiffs] relating to any claims arising from any act or neglect of [Lunn]. [Lunn] is responsible for all acts of [Lunn's] family, employees, guests or invitees." (Lease ¶ 9.)

In addition to being a Section 8 beneficiary, Lunn was a recipient of shelter payments at various times throughout her Lease of the Property in accordance with New York State Social Services Law 131-a. (Cty. 56.1 Stmt., D.E. 99, ¶¶ 26-30.) The County forwarded these shelter payments from the Department of Social Services to Plaintiffs on behalf of Lunn. (Cty. 56.1 Stmt. ¶¶ 26, 29.)

B.  Termination of the HAP Contract and Lease

The HAP Contract provides for its automatic termination in the event the Lease is terminated. (HAP Contract, Part C, ¶ 9; Town 56.1 Stmt. ¶ 29.) The HAP Contract further provides that it will terminate if the Town terminates program assistance for the Lunn family, if the Town determines that the Plaintiffs' Property does not meet all requirements of the HQS, or if the Town determines that Plaintiffs have otherwise breached the HAP contract. (HAP Contract, Part B, ¶¶ 4(b)(1),(2) and (8); Town 56.1 Stmt. ¶ 20.)

On January 22, 2014, the Property failed the Town's HQS inspection, and on January 28, 2014, the Town put Plaintiffs on notice that they were required under the HAP Contract to correct

6

the HQS violations within thirty days. (Town 56.1 Stmt. ¶¶ 45-46.) After the Town extended the Plaintiffs' time to correct the HQS violations to March 28, 2014, on March 1, 2014, Plaintiffs sent a Notice of "Termination of Lease/Non-Renewal of Rental Agreement" to the Town and Lunn, terminating the Lease as of May 1, 2014.[6] (Pls. 56.1 Counterstmt. ¶¶ 32, 54; Notice of Termination, Napolitano Decl., Ex. X, D.E. 103-29.) According to the Town, Plaintiffs' termination of the Lease automatically terminated the HAP Contract, including the Town's duty to make payments thereunder. (Town 56.1 Stmt. ¶ 51.) The Town also claims that Plaintiffs' failure to notify the Town on March 28, 2014 that the required HQS repairs had been made served as an additional basis to automatically terminate the HAP Contract.[7] (Town 56.1 Stmt. ¶ 53.) Plaintiffs contend that they did not renew the Lease due to outstanding rent and property damage and that it was the Town who terminated the HAP Contract on April 1, 2014, thereby terminating the Lease. (Pls. 56.1 Counterstmt. ¶¶ 54, 65.)

---

[6] Though the Notice of Termination refers to April 31, 2014 as the termination date, the Town's Rule 56.1 Statement notes that the Lease was terminated on May 1, 2014. (See Notice of Termination; Town 56.1 Stmt. ¶¶ 59-60.)

[7] Unrelated to Plaintiffs' termination of the Lease, on July 31, 2014, the Town terminated Lunn's enrollment in the Section 8 Voucher Program and barred her from receiving a voucher for any other residential unit based upon her failure to comply with HUD regulations. (Town 56.1 Stmt. ¶ 71; Town Hr'g Decision, Napolitano Decl., Ex. AA, D.E. 103-32; Pls. 56.1 Counterstmt. ¶ 58.)

7

On May 1, 2014, Lunn refused to remove herself from the Property despite the termination of the Lease. (Cty. 56.1 Stmt. ¶ 36; Pls. 56.1 Counterstmt. ¶ 60.) On July 8, 2014, Maitland initiated a Landlord/Tenant holdover proceeding against Lunn in the Nassau County District Court seeking to evict Lunn and her family from the Property, and seeked to recover $21,288.00 in back rent and damages. (Town 56.1 Stmt. ¶ 67; Notice of Petition, Fernandez Decl., Ex. J, D.E. 100-10, (Maitland v. Lunn, Index No. LT-3657/14 (Dist. Ct. Nassau Cty.); Pls. 56.1 Counterstmt. ¶ 67.) On July 25, 2014, Maitland and Lunn entered into a Stipulation of Settlement in the holdover proceeding. The Stipulation provided that Lunn consented to the entry of a judgment of possession and the issuance of a warrant of eviction and that Maitland waived any rent claim. (Town 56.1 Stmt. ¶ 72; Pls. 56.1 Counterstmt. ¶ 68; Stip. of Settlement, Fernandez Decl., Ex. K, D.E. 100-11.) That same day, a judgment was issued awarding possession of the Property to Maitland, plus costs and disbursements in the amount of $70.00, and a warrant of eviction was issued with execution stayed until August 15, 2014, which would allow the removal of Lunn and her family from the Property. (Town 56.1 Stmt. ¶ 73; Pls. 56.1 Counterstmt. ¶ 69; Landlord/Tenant J., Fernandez Decl., Ex. L, D.E. 100-12.)

Despite the issuance of a warrant of eviction, on August 15, 2014, Lunn failed to vacate the Property. (Pls. 56.1

Counterstmt. ¶ 71.) On August 16, 2014, the Property was fire-bombed, and according to a police report, there was an estimated $3,000.00 in damage. (Pls. 56.1 Counterstmt. ¶ 72.) On September 4, 2014, Maitland made an ex parte application seeking to amend the Stipulation of Settlement to include a monetary judgment in the amount of $21,552.00 against Lunn. (Pls. 56.1 Counterstmt. ¶ 73; Pet. to Amend Stip., Fernandez Decl., Ex. N., D.E. 100-14, at ECF pp. 3-4.) Maitland's application was rejected by the state court on September 10, 2014. That court ruled "[t]here is no provision for money in the Stip of Settlement . . . You can try suing them in civil court for $21,552." (Court Clerk Correspondence, Fernandez Decl. Ex. N, D.E. 100-14, at ECF p. 2; Pls. 56.1 Counterstmt. ¶ 73.) On November 5, 2014 the Nassau County Sheriff's Department executed the Warrant of Eviction and returned possession of the Property to Plaintiffs. (Nov. 5, 2014 Sheriff's Ltr., Fernandez Decl., Ex. O, D.E. 100-15; County 56.1 Stmt. ¶ 45.) Following Lunn's eviction, on or about November 24, 2014, the Town conducted an inspection of the Property and noted many of the same violations it had found in January 2014. (Compare Town 56.1 Stmt. ¶ 82 with Town 56.1 Stmt. ¶ 45.)

II. Procedural History

Plaintiffs commenced this action on October 6, 2014 asserting claims against all three Defendants for breach of contract, unjust enrichment and equitable estoppel, and an

9

additional claim under the Racketeer Influenced and Corrupt Organization Act ("RICO") against Defendant Lunn. (Compl., D.E. 1.) Each cause of action sought $37,106 in damages which included owed rent and property damage as of October 2014. (Mar. 4, 2016 M&O at 5 (citing Compl. ¶¶ 59, 65, 69, 76, 98, 100, 102, 105-06).) On March 4, 2016, this Court granted the Town's motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, specifically for failure to satisfy the jurisdictional requirement, and sua sponte dismissed the claims against the County.[8] (Mar. 4, 2016 M&O at 5-11.)

On March 7, 2016 Plaintiffs filed a motion for reconsideration of the March 4, 2016 M&O. (See Recons. Mot., D.E. 59.) In regard to the amount in controversy requirement, Plaintiffs argued that they were unable to provide a final damages calculation at the time of filing their Complaint because Lunn had not vacated the Property until November 4, 2014, one month after they filed their lawsuit. (Mar. 21, 2017 M&O at 8.) Denying Plaintiffs' motion for reconsideration, this Court found that Plaintiffs failed to clarify their factual allegations and instead, "flatly dismiss[ed] the Town's arguments, stating only

---

[8] Defendant Lunn failed to answer or otherwise defend herself in Plaintiffs' action, and the Clerk of the Court entered a certificate of default against her on February 8, 2016.
(Mar. 4, 2016 M&O at 2, n.1; see Clerk's Entry of Default, D.E. 56.)

that '[t]he amount of controversy is over $75,000.00 in Property Damage and Back Rent.'" (Mar. 21, 2017 M&O at 14.) However, the Court granted Plaintiffs leave to file an amended complaint to plead facts that would satisfy the amount in controversy requirement. (Mar. 21, 2017 M&O at 26.)

The Court also considered the Town's other grounds for dismissal. The Court found that Plaintiffs had plausibly alleged a breach of contract claim against the Town but granted the Town's motion to dismiss Plaintiffs' unjust enrichment claim because a valid contract governed the dispute. (Mar. 21, 2017 M&O at 21-23.) Finally, the Court dismissed Plaintiffs' claims of equitable estoppel against the Town and the County. (Mar. 21, 2017 M&O at 23.) The Court instructed Plaintiffs that "[i]n any forthcoming complaint, Plaintiffs must assert proper jurisdictional allegations with respect only to (1) the breach of contract claim against the Town and the County and (2) the unjust enrichment claim against the County." (Mar. 21, 2017 M&O at 23.) On March 30, 2017, Plaintiffs filed their Amended Complaint. (See Am. Compl.) The Town and the County both moved for summary judgment on September 10, 2018.

## DISCUSSION

I. The Amount in Controversy Requirement

As a threshold matter, the County argues in its motion for summary judgment that the Court lacks subject matter jurisdiction

11

to hear this case because the amount in controversy as against the County is less than $75,000. (Cty. Br. at 10-11.) For the reasons set forth below, the Court agrees and concludes that it lacks subject matter jurisdiction over the claims against the Town and the County.

To properly invoke federal diversity jurisdiction, there must be complete diversity, as well as an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332. A court may examine subject matter jurisdiction at any stage of a proceeding and must dismiss the case if subject matter jurisdiction is lacking. Manway Constr. Co. v. Hous. Auth. of City of Hartford, 711 F.2d 501, 503 (2d Cir. 1983). It is the Plaintiffs' burden to prove "to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (citing Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975)); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290, 58 S. Ct. 586, 591, 82 L. Ed. 845 (1938) (allocating the burden to the plaintiff because he or she "knows or should know whether [the] claim is within the statutory requirement"). While the Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999), a court must dismiss the case for want

of subject matter jurisdiction if, "'from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or . . . that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction.'" Tongkook, 14 F.3d at 784 (quoting St. Paul, 303 U.S. at 288–89, 58 S. Ct. at 590).

Further, although "[t]he amount in controversy is determined at the time the action is commenced," a subsequent discovery that the true amount in controversy is below the minimum statutory jurisdictional amount requires dismissal for lack of subject matter jurisdiction. Id. at 784, 786; Gucciardo v. Reliance Ins. Co., 84 F. Supp. 2d 399, 403 (E.D.N.Y. 2000) (where facts developed during discovery reveal that the "Plaintiff's claim could not reach the jurisdictional threshold at the time of filing the complaint, the suit must be dismissed.") "But the test remains severe, allowing a finding that the amount in controversy falls below the threshold only in three situations: '1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of substantive law or measure of damages limits the money recoverable by the plaintiff; and 3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction.'" Brown v. N.Y. State S. Ct. for 2d Jud. Dist., 680 F. Supp. 2d 424, 429

13

(E.D.N.Y. 2010) (quoting Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702).

Here, to a "legal certainty," Plaintiffs' claims against the Town and the County cannot meet the minimum jurisdictional requirement because the relevant agreements limit their recovery.[9] Plaintiffs allege damages in the total amount of $104,217.54--specifically, $28,784.00 for outstanding rent and $75,433.54 for property damage.[10] (Amend. Compl. ¶¶ 56-61.) However, the operative agreements provide that Lunn, and not the Town, is responsible for paying any property damages. See Sheldon v. Khanal, No. 08-CV-3676, 2011 WL 3876970, at *9-10 (E.D.N.Y. Aug. 31, 2011) (finding breach of contract claim did not meet the required amount in controversy where plaintiffs' damages were limited by the terms of the contract).

As discussed supra, the HAP contract executed by Plaintiffs and the Town specifically provides that the Town is not responsible for the conduct of the tenant and that the Town is only responsible for making HAP payments to Plaintiffs in

---

[9] Notably, Plaintiffs have not challenged the validity of the Lease or the HAP Contract.

[10] Though the Amended Complaint alleges $104,217.54 in total damages, Plaintiffs' Rule 56.1 Counterstatement claims total outstanding rent and property damages of $115,819.54, which includes $40,386 for outstanding rent and $75,433.54 in property damage. (Pls. 56.1 Counterstmt. ¶ 51.) Even if the Court were to consider this later damage claim, the outcome would be the same.

14

accordance with the HAP Contract and HUD requirements. (HAP Contract at Part B, ¶ 2(e), 7(e)(1).) It also states that "[t]he [Town] shall not pay any other claim by [Plaintiffs] against [Lunn]." (HAP Contract, Part B, ¶ 7(e)(2).)

Moreover, the HAP Contract operates in conjunction with the Lease executed by Plaintiffs and Lunn. (See generally HAP Contract.) The Lease specifically assigns liability for any property damage to Lunn. (Lease ¶ 9.) Thus, as this Court stated in its prior order on Plaintiffs' reconsideration motion, "under the Lease Agreement and the HAP Contract, Lunn is responsible for all property damage." (Mar. 21, 2017 M&O at 21) (citations omitted).

Similarly, the County cannot be held liable for any damage to Plaintiffs' Property. The County was not a party to either the HAP Contract or the Lease. It merely provided shelter payments to Plaintiffs on behalf of Lunn in connection with a Department of Social Services program. (County 56.1 Stmt. ¶¶ 23, 26; Cty. Dep't of Soc. Servs. Letter dated May 18, 2010, Fernandez Decl., Ex. G, D.E. 100-7.) Further, Plaintiffs have not set forth any plausible legal theory under which the County could be held liable for damage that Lunn caused to their Property.

As Plaintiffs have failed to allege or submit any evidence demonstrating that either the Town or the County could be liable for property damage under any contract, at most, the Town and

15

County could be held liable for the $28,784 sought in unpaid rent. This amount falls far short of the jurisdictional threshold of $75,000.

Notably, even if Plaintiffs have met the jurisdictional requirement as to Defendant Lunn, as they have alleged that she is liable for the $75,433.54 in property damage, this does not confer subject matter over Plaintiffs' claims against the Town and the County. When a diversity case involves more than one defendant, "Plaintiffs must meet the amount-in-controversy requirement for each defendant; they may not aggregate claims against individual defendants to reach $75,000." Perrone v. Amato, 09-CV-0316, 2010 WL 11629624, at *2 (E.D.N.Y. Aug. 30, 2010) (citing Chase Manhattan Bank, N.A. v. Aldridge, 906 F. Supp. 870, 874 (S.D.N.Y. 1995) ("'a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. It must satisfy the jurisdictional amount with respect to each defendant.'")) See Green v. Doukas, 97-CV-8288, 2001 WL 767069, at *2 (S.D.N.Y. June 22, 2001) ("[A]ggregation is allowed when the defendants' liability to the plaintiff is common, undivided, or joint. It is not allowed when the defendants' liability is several, or if the claims against them are separate and distinct from one another.") (internal quotation marks and citation omitted).

Further, "[a]lthough supplemental jurisdiction, as set forth in 28 U.S.C. § 1367, often allows a court with original jurisdiction over at least one claim to hear other, related claims, section 1367 does not allow a plaintiff to circumvent the jurisdictional limit in a diversity matter." Nastasi v. Lari, No. 15-CV-6066, 2017 WL 943935, at *4 (E.D.N.Y. Mar. 9, 2017) (citing Congram v. Giella, 91-CV-1134, 1992 WL 349845, at *3 (S.D.N.Y. Nov. 10, 1992) ("noting that, in a case where original jurisdiction is grounded solely in section 1332, the aggregation rules of section 1332 apply in determining whether the Court has supplemental jurisdiction under section 1367 over claims by a plaintiff"); Perrone, 2010 WL 11629624, at * 5-6 (noting that other courts have held that "§ 1367(b) prohibits courts from exercising supplemental jurisdiction over separate defendants, where plaintiff have not met the statutory minimum amount in controversy against each defendant").

Here, Plaintiffs cannot aggregate their claims against Lunn with those against the Town and the County as Defendants are not jointly liable. Further, this Court will not allow Plaintiffs to skirt the jurisdictional requirement and exercise supplemental jurisdiction over Plaintiffs' claims against the Town and the County. Thus, $28,784 is the maximum amount Plaintiffs could potentially recover from the Town and the County for unpaid rent. As this is far from the jurisdictional requirement of $75,000,

Plaintiffs' claims against the Town and the County must be dismissed.

Therefore, Plaintiffs' claims against the Town and the County are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, and the Court does not reach the parties' summary judgment motions.

## CONCLUSION

For the foregoing reasons, because the Court lacks subject matter jurisdiction as to the claims asserted against the Town and the County, it dismisses those claims and will not pass on Defendants' motions for summary judgment.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

With regard to Defendant Lunn, Federal Rule of Civil Procedure 4(m) directs that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, the action may be dismissed without prejudice after notice to the Plaintiff.  See FED. R. CIV. P. 4(m).  More than 90 days have passed since the Amended Complaint was filed.  Plaintiffs are hereby given notice that if they do not file proof of service by August 30, 2019, the case will be dismissed as to Defendant Lunn.

        SO ORDERED.

        /S/ JOANNA SEYBERT
        Joanna Seybert, U.S.D.J.

DATED:    July  2 , 2019
            Central Islip, New York